(C.D. 2672)

BARAD SHAFF SALES CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 5, 1966)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Sheila N. Ziff* and *Harvey A. Isaacs,* trial attorneys), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: The parties concede that the merchandise of this suit is an unenumerated manufactured article, dutiable under paragraph 1558.

The sole issue in controversy, therefore, is whether it is, or is not, an edible preparation for human consumption, other than yeast. If it is not such an edible preparation, and plaintiff claims that it is not, then plaintiff is entitled to the 10 percent reduced rate provided for in the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739. If it is an edible preparation (and not yeast, and clearly it is not yeast), then the unreduced rate of 20 percent applies. It was classified in liquidation as an edible preparation, and that is the classification which defendant asserts.

The Torquay modification of paragraph 1558, which affects this classification issue, is as follows:

Articles manufactured in whole or in part, not specially provided for (except the following: * * * and edible preparations for human consumption other than yeast)

The merchandise is a Danish product that was marketed under the trade name Junex. It was entered at New York on October 16, 1961.

The official papers are in evidence. They include a report of the United States Customs Laboratory at New York, dated November 28,

1961, which shows the approximate composition of Junex, by weight, as follows:

| | |
|---|---|
| Butterfat | 44.7% |
| Sugar | 51.9% |
| Moisture | 3.4% |
| Trace of Vanilla | |

Plaintiff adduced the testimony of two witnesses.

Mr. Alexander Barad, who said that plaintiff is a partnership of which he is the "majority partner," testified that plaintiff is a member of the "Commodity Exchange on certain commodities," and that its business is general importers and commodity brokers. Plaintiff partnership has been in existence for 20 years. Prior thereto, Mr. Barad worked as a salesman of dairy products. He has dealt in "butter, butter oil, eggs, cheese, and on the Commodity Exchange, potatoes." (R. 5.)

Mr. Barad described Junex as a solid at normal temperatures, as butter is, and oily at high temperatures. It is heavier in texture than butter; and, except that it has a higher yellow color, it looks like butter.

At a time when "foreign markets were under the American market" to a point where it paid to import, Mr. Barad developed the formula for Junex and had it manufactured in Denmark to his formula. The product was not previously on the market commercially.

Plaintiff sold Junex to The Borden Co., which over a period of 4 or 5 years used it in the manufacture of ice cream. Attempts to sell Junex to the baking and confectionery trades were unsuccessful. Mr. Barad said this was because Junex was unsuitable for such use.

Plaintiff's second witness was Mr. Charles F. Fox, assistant to the vice president in charge of production of The Borden Co. He has handled, or overseen, the use of Junex in the Borden plants. Borden manufactures a line of ice creams, of differing compositions and sold under different trade names.

The gist of plaintiff's claim appears to be that Junex is a solid product and has to be heated before it can be added to the ice cream mix, whereas normally all the ingredients of ice cream are in liquid form and do not require heating to convert them into liquids; hence, the use of Junex in the ice cream mix requires special equipment. This special equipment consists of a blending tank with steam jacket. Blending tanks are normally used in making ice cream; but the special requirement in using Junex is the heating of the blending tank.

Another processing distinction is that the percentages of sugar and butter oil in the finished product are not identical with the percentages

of those components in Junex. Mr. Fox described the process, on cross-examination, as follows:

Ice cream is composed of butterfat, serum solids, sugars, both corn and sucrose, and stabilizers. If we were making a 10 per cent butterfat mix we would probably have about 18 per cent sugar, and we would have a portion of that would be corn, and a portion of it would be sucrose, and we would have to add additional ingredients to the batch to balance out the level or percentages of fat and sucrose.

Now we use whole condensed milk for our serum solids, that is, milk solids, non-fat, and this is composed of 28 per cent serum solids and 12 per cent—11 to 12 per cent butterfat, so we have—the initial ingredient we start out with is serum solids, and we take whatever butterfat comes along with that, and then we would adjust this by the use of additional fats from other sources, and then we would adjust the mix by addition of corn syrup or sucrose syrup and water. [R. 24, 25.]

Plaintiff's brief recites the issue as one calling for construction of the language "edible preparations for human consumption." Does this language, plaintiff asks, "include Junex, a substance which is not customarily eaten in its condition as imported, which has no use except under special conditions for ice cream manufacture in one establishment, in which its composition must be altered before such use?" (Plaintiff brief, p. 5.)

We are of opinion that the answer to plaintiff's query is yes, Junex is an edible preparation for human consumption.

Our first findings are that this is an unenumerated manufactured article and that it is a preparation which is used in the manufacture of ice cream for human consumption.

Both parties cite and discuss, in their briefs, the decision of our appeals court in *United States* v. *P. John Hanrahan, Inc., et al.*, 45 CCPA 120, C.A.D. 684.

In that case, the merchandise involved was described as vitalized wheat gluten, or gum gluten, which is not eaten as food in its condition as imported but is used in the baking of bread and other foods for dietary purposes, in order to increase the protein value of wheat flour. When the case was before us, we held that the condition of merchandise at the time of importation determines classification for tariff purposes; and that, on the facts of record, the wheat gluten was not, at the time of importation, an edible preparation for human consumption, although admittedly it was used after importation in the making of bread for human consumption. *P. John Hanrahan, Inc., et al.* v. *United States*, 39 Cust. Ct. 37, C.D. 1900.

Our appeals court reversed, the then Judge (now Chief Judge) Worley dissenting. While Judge Worley relied, as we had done, on the condition of the wheat gluten at the time of its importation as being

decisive of tariff classification, the majority held that the term "edible preparations for human consumption" embraces all preparations which ultimately may be consumed in foods, and that it is not limited to those preparations which can be and usually are eaten in the form in which they are imported. Language of the majority opinion, relevant to the controversy before us here, includes the following:

It is, of course, true, as urged by appellee, that classification must be determined on the basis of the condition of the merchandise at the time of importation, but the instant *merchandise*, as imported, is capable of being eaten, and therefore *is edible even though it must be mixed with other ingredients and cooked before the actual eating takes place. United States* v. *P. John Hanrahan, Inc.*, 45 CCPA 120, at p. 124. [Emphasis added.]

The facts here bring this case within the four corners of the *Hanrahan* decision. Junex is mixed with other ingredients and cooked, before the actual eating takes place. *Ergo*, it is edible, as wheat gluten was held to be.

We are not persuaded that other cases, cited in plaintiff's brief, require us so to distinguish the facts here from those of *Hanrahan*, as to arrive at a decision contrary to that of our appeals court in that case. Each preparation is to be judged on its facts. The fact that other ingredients are added to Junex as a part of the ice cream mix; the fact that Junex is heated, changing its solid form into liquid; all these are similar to matters that our appeals court considered in *Hanrahan*. We have considered them here.

The protest is overruled. Judgment will be entered accordingly.